For the attorneys, please step forward and identify themselves. Good morning. I am Todd Gale. I represent Citibank, N.A., the appellant this morning. I'm Anthony J. Pallotto, and I represent the appellee. Okay, you know our standard procedure. If there are a series of questions, we give some leeway, so don't be too concerned about that. And with that, I guess you may start. Thank you. May it please the Court, we're here this morning to determine whether or not a valid Totten Trust or payable on death account was created by Shirley Ida Epstein in July of 2005. The parties agree that this is the single question, whether or not a valid Totten Trust or payable on death account was created. Shirley Ida Epstein died on the 11th of October, 2006, almost exactly four years ago, at the Midwest Palisades Parent Hospice Center in Skokie. A little more than a year before she passed, Ms. Epstein went into her Citibank branch and asked to change the beneficiary of her savings account. We're here today to ask this Court to determine whether Citibank correctly acted upon her intent. Counsel, at some point I seem to have gathered a bit of confusion from your brief. Right now, you're saying that this was a change in the account so that it is basically a transfer from one account to another or an amendment of an account. In another place, you distinguish Petralia by saying Petralia deals with a transfer, this is an original. Or at least if you don't do it, your opponent does it. Now, which is it? I think that that was in my opponent's brief, but I could be mistaken. The way it worked was this. She had opened the account about two years before in 2003. So the account was already open, it was her individual savings account. Then in July of 2005, about 14 months before she passed away, Ms. Epstein went into the Citibank branch and asked if she could add a beneficiary. Does that answer your question, Your Honor? Was this a transfer or an amendment? It was an amendment, but it had to be a transfer. What's the difference? I don't know if there is a difference for purposes of setting up a Totten Trust, to be honest, Your Honor. The Weiland case, for example, which is cited in our brief, talks specifically about a number of accounts that Mrs. Weiland had that existed that she changed over to make them payable on death accounts. I'm glad you mentioned the Weiland case because the Weiland case is the case that deals with the POD statute. It does. And sets it out in full. It does. And I think we have to get into that to the extent that the writing that's required under the POD is discussed in a case that I didn't see cited by either of you. And that's the Wakevich case, which is a Justice McNamara's decision at 25 Illinois Appellate 3rd, where he takes a very strict approach to the contract requirements under the POD. And doesn't seem to satisfy himself with a simple notation. And I think that case may very well be central to the issue in this case. But before we talk more about the Wakevich case, might I ask, Your Honor, because I will confess that I'm not familiar with that case, which is why I didn't cite it. That's why I mentioned it to you up front, because if nothing else, we may decide to get a little bit of an additional writing on that case because it seems to be central to the issue of the sufficiency of the writing required under the POD. Might I impose upon Your Honor to give me the full cite of that case, if you have it? Sure. It's 25 Illinois Appellate 3rd, 513. What year was that decided? Well, it's 25 Illinois Appellate 3rd. It tells you it's not exactly a newborn. Yes. Yes, Your Honor. But it did come after the enactment of the statute. I guess it's 1975. It's 1975. And the reason I ask, Your Honor, is because it would appear to me, from my understanding of the case law, that while it's absolutely true that a writing is required for the statute, I do not believe that a writing is required to create a valid Totten Trust. In other words, although a Totten Trust and a payable on death account are fairly coterminous, they're very similar ideas, if one were to read the case, I apologize, I'm forgetting the name of the case, but in gray, a state-of-the-right case that's cited in our papers. In that particular case, Mr. Wright walked into the Farmer's State Bank and just told the teller that he would like to include his girlfriend on his account. And if I'm not mistaken, Wright was just a little older enough from Justice McNamara's case in Wakevich to have preceded the statute. Well, and that might be, I don't know the answer to that question. And I don't know, as I stand here now, whether the Wright case preceded the Wakevich case. But from our perspective, it would appear that the intent of Ms. Epstein was clear. The question under Weyland, I suppose, is whether or not that particular writing, that's an issue in our case, the signature card, whether that is enough to create the presumption of Ms. Epstein's intent so that based on that presumption, the burden shifts over to the administrator to prove by clear and convincing evidence that there was not a valid patent for us to create. Do you know, before we get to that, my question is, you were on notice and the administrator asked you to freeze and you didn't. That's true. And you did nothing. You didn't notify them when this occurred. You just went ahead and did it. That's what it appears from the record. That is exactly right. And as a result, we do not have the benefit of the safe harbor of Section 5 of the Act. And that's true. We don't try to claim the benefit of that safe harbor and say that we were somehow released when we made the payment because we were on notice at the time we made the payment. We don't dispute that. All right. Proceed. In the cases that you cite, all of them, we're trying to discern the intent. All those cases, there's at least some writing upon my death that gets paid to so-and-so. Right. Or this is in trust to so-and-so. All we have here are three letters, ITF. Right. How can we discern any intent, even if, I don't know, whether intent is even required? I mean, is this enough to invoke all the significant legal consequences of setting up a trust, the letters ITF? I believe that it is, Your Honor, and let me explain at least two reasons why. Number one, we have the testimony, the sworn affidavits. Who specifically? Matthews and Aitken. Because Matthews was challenged under the Dead Man's Act. And, again, I find it a little bit anomalous because there was no additional research done under the Dead Man's Act to distinguish between the affidavit of an employee or an officer about the business of the employer in which the employer is a party as to whether that puts him within the party and interest provision of the Dead Man's Act. And both sides have chosen in this case to kind of glance by that. But I don't think either of you will be happy if we do. Well, and if I might, Your Honor, in our reply brief between pages two and five, we do address the Dead Man's Act arguments, and we cite the cases Maholsky v. Chicago Title and Trust, Geiske v. Hardwood Rehabilitation Board. You're just saying they're waived because they weren't addressed in the initial briefs. Well, it wasn't raised below, Your Honor. That's fine. It was raised in the response to the motion for summary judgment. Your opponents did raise the Dead Man's Act as against Wheelan. We addressed it in our reply papers here. If that was an oversight. You addressed it in your white brief very briefly, I believe. You anticipated their defense. And that was it. Okay. So is Your Honor's concern that we did not cite the cases in our open overview? Well, what is the rule, as far as you're concerned, that determines whether an employee who is otherwise, for purposes of the employer's business, his agent, who drafts an affidavit concerning his duties that he carried on while being an agent? Does this make him a representative or an individual? And if he's an individual, is this sufficient to detach him from the category of a party in interest? He is an individual from our perspective, and it is an individual. What case do you support? The Mahulski case. The Mahulski case that we cited in our papers. It's 50 Illinois Appellate 3rd, 335. And the specific jump site is at page 339. And the principle for which the Mahulski case stands, as well as the Geiske and Sienke cases, is because Ms. Matthews does not have any pecuniary interest in the outcome of this litigation, the Dead Man's Act does not apply as against her. Now, how does a corporation submit its affidavit or its testimony where it is a party? Won't it always be through a representative? Does this mean that corporations generally are immune from the provisions of the Dead Man's Act because they can only act to parties who, in those cases where it's only the corporation that's being sued, those parties will not have, so to speak, a direct pecuniary interest? I think it depends on the facts of the case. And let me tell you at least how I understand it, and we can have a further conversation if that would please Your Honor. It seems to me that if this were a closely held corporation, let's say that I and co-counsel were all brothers and we started a company, and one of us were to testify, but we each owned one-third of that company, but we were testifying on behalf of the corporation. Based on what happened in that case, I might have a direct pecuniary interest in the outcome. Let me contrast that for a moment, though, with the facts that we have here. Citibank is a very large operation. There is absolutely no evidence that Ms. Matthews has any pecuniary interest in the outcome of this litigation. Just between us girls, so to speak, who asked her to prepare this affidavit? Who do you think? And why would she do it? I would guess that someone within the hierarchy of the corporation, common sense would seem to indicate. Well, obviously, I'm not arguing a case of far-be-it to argue common sense. I'll leave it like that. But one would think that there is an interest in satisfying her employer since she's salaried. But that is not really the evil, as I understand it, that the Dead Man's Act is there to address. I'm not disputing that because I'm anxious to see Mikulski. Okay. All right. Industry policy and practice was followed at Citibank in setting up this Taunton Trust. Ms. Epstein personally appeared at the Citibank branch and requested that her account beneficiary be changed. Then the bank officer, Ms. Matthews, verified her identity, even though she knew very well Ms. Epstein from dealing with her over the years. She looked at Ms. Epstein's driver's license. Then she filled out the signature card and had Ms. Epstein sign it in her presence. The actual signature card that she signed on July 27th of 2005 is found in the appendix to our brief at pages A6 and A7. And then the bank kept the signed signature card. This, consistent with the affidavit testimony of Linda Aitken, is the standard practice in the industry. I thought there was supposed to be a second card. Well, that's not. There was. Ms. Aitken testified that Citibank does have people sign two different cards. And in this particular situation, one card was signed. The question that that presents, I believe, is whether that has any impact on its ability to evince the intent of Ms. Epstein to do what she did. In other words, if the law is here so that we might execute on the intent of Ms. Epstein, as what should happen with her money and her assets when she dies, does it matter whether she signed one card or two? As I understand the cases, the Weiland case going all the way back to the Petralia case in 1964, 1965, pardon me, which I understand to be the first case in Illinois to recognize Totten Trust, the law is clear that the fundamental purpose is to try to understand the intent of the person who set up the account and to go forward and try to execute on that intent. The question then becomes, has Citibank done that? Whether or not we are able to rely on the safe harbor and get a release under Section 5 of the Act, whether or not the writing is sufficient to meet Section 3 of the Act, which I'll argue in a moment I believe it is, the real question behind all of that. What does all of that tell us about Ms. Epstein's intent? Well, let's talk a little bit about that facet, presuming without getting into the possible change of course that the POD statute interjects. The rule in Petralia is that if you have a card signed as providing a conveyance, the equivalent of a conveyance in trust with a lifetime interest preserved or something to that effect, you don't need that language, that there's benefit given at death without providing that that trust is irrevocable. Signed by a trustee, it creates a presumption which permits counter evidence to come in, which again has to be clear and convincing apparently under existing case law. Now, does this card that we're talking about meet the threshold specifications to raise that presumption since as Justice House points out, it hangs by a little thread of T.F. something of an acrostic, without a signature as a trustee. Under the law of Illinois, there is no specific form that is necessary to set up a trust. What is necessary is to understand the intent of the benefactor and what it is that they're trying to do. So it all hangs basically on Matthews, doesn't it? Because if it were just this card, is this card sufficient? Let's forget about Matthews. To create the Petralia presumption. I believe it does, and this was the other part of the answer that I hoped to get to a moment ago. There would have been no purpose for Ms. Epstein to go in that day and sign a new signature card unless she intended to change something about it. She signed a card that said, Shirley Ida Epstein, I.T.F. Eddie Epstein. Eddie Epstein was her nephew. Eddie Epstein was her closest living relative. He came to see her whenever he was in town from New Jersey and took her to dinner. Eddie Epstein was the person, according to his declaration, that they had to have. That all involves extrinsic evidence, or at least part of the evidence, to be drawn from Eddie's own affidavit, which the trial court chose to reject. The question is, I suppose, if the trial court rejects the credibility of an affidavit because of the inherent self-interest involved, where are we with that? Are we still on a de novo basis with that, or do we have to? I suppose we are, because it's just a writing. I believe you are, because it's still based on summary judgment. There was no testimony from Mr. Epstein, physical present testimony, and there was no indication based on the ruling of the trial court that they found Mr. Epstein's written testimony. Now, what is there to countervail this evidence? If we're looking at evidence here, we're already no longer in summary judgment territory, so to speak. When we call it evidence, we're already in issue of fact territory, unless the evidence is undisputed. And it is. And it is. And let me explain what I mean by that. I understand that they attack the credibility of what we put before the court to support our summary judgment motion. But at the end of the day, the only actual evidence that we have of Ms. Epstein's intent, one way or the other, is this card. It is a writing. It says ITF for Entrust For. Every monthly statement that she got after that, instead of being addressed to Shirley Ida Epstein, was addressed to Shirley Ida Epstein ITF Eddie Epstein. That didn't just happen to find its way onto the signature card. That happened because she came into the bank and asked for it to happen. And Ms. Martinez testified that she went through all the steps that they normally go through. I understand that there was also testimony from Ms. Aitken talking about the fact that there are normally two cards signed and not one. I submit to Your Honor and to this Court that that does not reflect on or take away from, it's probably a better way to look at it, it does not take away from the impact of the fact that Ms. Epstein. But if that's the case, what do we need Petrelia for? And what do we need the original New Jersey case, I guess, of Totten? Totten, right. If we're talking about the supremacy of the card in the face of uncontested evidence, and if we're talking about contested evidence, then the whole efficacy of Petrelia is really in the burden of proof and the fact that you'll need clear and convincing evidence to overcome that presumption. But otherwise, that's all we have is basically a Panama rule of evidence. You have an indication of intent from a card that is undisputed and consequently carries the day. As I understand the Weiland case, for example, if there is a writing to evidence the intent of the person who is the account holder during their lifetime, that is what shifts the burden. It does not talk about a specific writing. It does not talk about any particular points that have to be in the writing. There has to be a writing evidencing the intent. And now that we know that there is a writing because we have the card that she changed that day for no other apparent reason but to make her nephew her beneficiary after she died of those funds, that shifts the burden over to the administrator to prove by clear and convincing evidence that that was not her intent. How does the Payable on Death Account Act affect the cases that we're talking about here, Petrelia, and specifically Wright? In Wright, there was no writing issue stated earlier. He just said do it, and they changed the account. Now the Payable on Death Accounts Act requires a writing. Would Wright be decided differently because it was not in writing? I'm not sure. That's a good question, and I'll be honest with you, I'm a little on the fence on that as I read these cases because it seems to me on the one hand it could mean that. I don't know that that is the better reading of the case. It seems to me Totten was a common law principle. It came down from New York and then the Petrelia case here in Illinois. It seems to me that to the extent that the legislature decided that they wanted to, you know, I did not see anything explicit in what the legislature did saying that only if it's not. Your Honor, I'm going to, with permission of my presiding justice, interrupt you for a moment. Yes, sir. Because I think that the Wetkovich case is so central to what you're arguing that I think I should let your opponent see it while you're arguing it, and then he'll let you see it during his argument and you might be able to address it on rebuttal. Okay. Okay. With that then and with the- It's a short case. Okay. And I will read it after I sit during my opponent's argument. But it seems to me, let's assume for the moment that there does have to be a writing. One then needs to look at the signature card. And what does the signature card say? The signature card gives her signature. It says ITF. As a portrayal of the court held, you know, there would be no purpose for her to do that if that was not- you know, there's no other explanation. The reason I ask the question is because when we go- that's what applied to those payable in-depth accounts. When you go back to the trust accounts incidents, it says that a person has to be, quote, designated as a trustee and also a person has to be designated as a beneficiary. Right. And as I understand it, Black's Law Dictionary says designated means a name plus a description, which means that I, Ida, Ms. Shirley Epstein, quote, as trustee. And it also should refer to Eddie as beneficiary. You don't have those designations as required by the statute. And does that have any bearing on this? Is there- I mean, has the legislature stepped in on this and said, we're going to look at these cases and this is what's required in order to create this patent trust? Right. In other words, first of all, maybe Justice Gordon's case revolves that. I'm sorry, I didn't see it either, Jay. And perhaps it does. It's actually cited in one of the other cases that were. Oh, was it perhaps in the Weiland case? Because most of the other cases were older. I can't claim to have dug it out by myself without help from the cases you cited. That might be. In other words, there are different kinds of trusts that statutes set up, but there's nothing in here that says any trust that doesn't- it doesn't specifically overrule the common law that allowed for patent trust. If, in fact, the Wright case came very shortly before this, it doesn't say any- while it says that to set up a trust as opposed to a payable on death account, one would need to have the writing designated beneficiaries this way and that. It certainly doesn't say that no one can say orally who might be the beneficiary. So, in other words, I see where Your Honor is going with this. I sure am looking forward to reading the case when I sit down, and I'll see, you know, I'll probably be able to answer your question more intelligently after I see it. Is that it, counsel? I'm sorry? Is that it? Well, I was going to look at my notes quickly because I've been answering questions and I didn't know if I'd hit every point that I wanted to. Here it is. Oh, it's cited in Weiland at page 603. It's in Weiland? Okay. In the middle paragraph, right under the site of La Pierre. Okay, okay. And it has a parent. Only it's miscited for some reason or another because I cited the blur of tributes to it, a disregard for the necessity of the card when, in fact, it's the other way around. The only other point I would make briefly before I sit would be that the card does qualify as a business record as supported by the testimony of, for example, Amy Olson, who is the... Well, no one has contested that. I'm sorry? No one has contested the admissibility of the card. Okay. And then as to the issues that have been raised by the administrator on this legal title change form, there is no law, there has been none cited, that something like a legal title change form is necessary for purposes of setting up a valid patent trust. That's all I have right now. Unless you have further questions, I'll be happy to address whatever else I have. Thank you. Justice House, would you prefer to see it before counsel does? If there's time. I prefer them to see it. I'll let you lead on the question. Good morning, Your Honor. Allow me to clear up three points that counsel may. Number one, this guy, Eddie Epstein, is not the closest living relative of the decedent, Shirley. Her sister, who was the administrator of this state, was the closest. Second of all, in the Wright case, again, they opened a separate account, and he put on there, Charles Wright, pay on death to Mary Lowe. And lastly, he said that monthly statements were mailed showing this Eddie Epstein. That's untrue. The record shows that he was invited to bring in these so-called monthly statements that were sent in after or before the death.  Yes. Forget about the Webkovich case, which I'm sure you're going to want to address. But without that case. And I want to thank you for that, too. Well, it's the judicial system that doesn't limit us to your research, if we're interested in finding a point, and the fairness of letting the parties see it that dictates the procedure here, because I really want a response, if possible. And if you both tell us that it's too quick, I certainly would talk to our P.J. to see if we should give you additional briefing opportunity. That's okay if that's what it comes down to. Sure. But in any event, forgetting about that case, doesn't that acrostic TF whatever on that card suffice to take it out of summary judgment territory to at least make it an issue of fact, which is the alternative remedy that your opponent is seeking? We're talking about the intent here of that idea. Isn't that a factual question now since we have one indication on the card, and we have your claims that it isn't so, which frankly at this point are mute because I don't know what your evidence was other than what you're now arguing. I don't know what you've argued, but that seems to be an evidentiary argument at best. How can you determine intent from ITF? We have an elderly lady who she has no handwriting on this card at all. Her only handwriting is her signature. Have you charged the bank with fraud? No, Your Honor. So at least for purposes of entertaining this cause of action, there is no, in the absence of an indication of fraud, and in the very imminent likelihood that these changes were made in the presence of the testator, that an issue of fact is created. Your Honor, I think the legislature gave financial institutions an opportunity to avoid the statute of wills by creating this Illinois Trust and Payable on Death Accounts Act. I think something more than a card with ITF not even written by the signator or the account holder is required to establish some scintilla of intent to create this question of fact. I mean, we don't know when this card was signed. We don't know where this card was signed. Now, why then should the court close its eyes and pretend it wasn't? Under what theory, under what standard of proof or what have you, do we get to your summary judgment in your favor? Your Honor, when I was a law student a few years ago, I remember my law professor saying, hard cases make bad law. And this, I think, qualifies. As a former law school teacher, I can tell you it means hard cases require additional research. Well, in this case, your Honor, asking Citibank to pay twice may qualify this is a hard case. But I think that they're required to do a little more than what they've done in this case. And I think that if you do not affirm Judge Kennedy's decision here, I think bad law will be created. Number one, you might as well throw out the Dead Man's Act as it applies to corporations because the only way Citibank can speak in this case, and remember, they were a party in interest. They decided to become judge and jury in this case. They disregarded the conflicting claims and says, we're going to pay this Eddie Epstein in New Jersey over. And I think that because they became a party in interest, didn't use our interpleader remedy and didn't hold the money until the court decided the case. In all the reported cases, your Honor, the bank either held the money until a court decided the case or they used the interpleader action. Now, if you assume that we just don't want to. What is the legal impact of the bank having won ahead on its own, other than the fact that it bought itself a dispute that is going to involve more legal fees for them and possibly double liability? But what is its significance here? It made them a party in interest, your Honor. So what? And it made them subject to the Dead Man's Act as far as I'm concerned. We know they're subject, but the question still remains, is their being subject to the Dead Man's Act, does that transfer over to Matthews? And that's a question we raised earlier. And I haven't seen any case law from you, and I'm anxious to see what the cases in the reply brief. The Dead Man's Act is self-explanatory. The only way this corporation can speak is through its agents. And sure, Carmen Martinez is not going to make any money, or she doesn't stand to lose any money in this case, but she's speaking on behalf of the party in interest. And she's been instructed, you know, what's your affidavit? Now, this affidavit is even impeached by her fellow employees' affidavit. And Citibank knew exactly what they had to do when they had to make a patent trust. They had a change-of-accounts title form that they didn't bother to sign. They didn't bother to sign the two signature cards, okay? And we don't know when this thing was signed. Who else was present when this was signed? We don't know if Eddie Murphy came in town with his old aunt and brought her over to the bank. We don't know anything about this. That's the purpose of the Dead Man's Act. It was constructed or enacted to prevent certain evils. And if we disregard it... Counselor, you're asking us to decide this issue on first principles. And first principles generally do not provide sufficient data to decide a case unless there are no closer cases dealing with that issue. It's like arguing due process. Well, as far as I'm concerned, Your Honor, if you don't throw this affidavit out... We have to test the case law to see if there are precedents that deal with affidavits of agents who are acting testimonially based on their firsthand knowledge as opposed to affidavits speaking for the corporation, which is not the case here. They're not talking for the bank, and he purports to talk about his own observations. Well, if you look at the other cases, Your Honor, that did establish a patent trust, and this is what we're talking about, a patent trust, Petralia, Whelan or Wyman, and the Wright case, all of them require the opening of another account, separate languages, different documents. In this case, there's no documentation whatsoever except a card, which we don't know when it was signed, with the letters ITF on it, and there's a box there that says trust. It wasn't even Xed out. Individual was Xed, so it continues to be an individual account. And their own protocol says, and they're a big bank, they have a huge legal department, their own bank, their own legal department says get this title change form signed. We wouldn't have this problem here if they did that. And second of all, we probably wouldn't have the problem if they hung on to the money and Martinez's affidavit was not blocked by the Dead Man's Act. But now that they've decided to become judge and jury, they're subject to all our rules. And if you say that Martinez's affidavit is allowable to determine the intent of Shirley's... And it was then signed individually or what have you. You know, Your Honor, it doesn't follow any of the cases, but it's a little closer. At least inject an issue of fact. If she wrote it and she put in trust for, there's a question of fact there. Is there any dispute that those initials mean in trust for? There's a dispute as to what this old lady... Is there? Yes, there is. Has anybody disputed it below? No. Do you think a dispute under those circumstances would get past a trier of fact? We don't know what an old lady thought ITF... Somebody wrote ITF and it might have been written after she signed the card. This card may have been signed other than when Conner Martinez... Isn't some evidence required here to further explore that? Or should we simply presume that unless it was established that it was contemporaneous, we're going to say it was subsequent? It's not our... Basically, Your Honor, we're saying that this belongs to the estate because it's marked individual account. Shirley... It's Shirley's money. They're saying that, well, no, it's a totentrust. We want to bypass the statute of wills. And we want to say this comes under Section 5 of the Illinois... If we're going to decide this under the common law, so to speak, without the benefit of the POD statute, I don't see how you could avoid the conclusion that there is at least a fact issue in this case. Well, I can avoid it, Your Honor, by saying that there's no evidence whatsoever. And remember, it's their burden of proof that Shirley, the decedent, the old lady, knew exactly what this word ITF meant. And she talks about... This Carmen Martinez talks about a nephew. They don't even have nephew written on there. They got... And his name is Edward Epstein. She puts Eddie Epstein on there. I mean, they're so... And then we have Linda Atkins saying that, well, this document, legal title change form, wasn't enforced. And then you find out from our brief that this was... in evidence for at least six, two years, yet they chose not to use it. I think that something more is required of a huge institution like Citibank. And I think that we've got to start... If we're going to allow avoidance of the statute of wills and allow these banks to pass on these accounts to these payable on death or top-trust accounts, we should require a little more, as Judge McNamara did in that... Counsel, you're not addressing the legislature here. That's a legislative argument. I'm addressing the fact that, based on what I see here, there is no, not even a scintilla of fact question as to whether or not they have met their burden to throw this into a top-trust account, forcing us to come forth with additional evidence to countermand that. I mean... You know, the trial judges, I think, are presumed to have only competent evidence in reaching its conclusion according to Mangoni. And, basically, his decision should not be disturbed unless you find it's against the manifest weight of the evidence. And I think, according to Weiland, a decision is not against the manifest weight of the evidence unless an opposite conclusion is clearly evident. I don't think there's a... I don't think an opposite conclusion is clearly evident in this case. I think we have a card. We don't know when it was signed. But the summary judgment standard can't be confused with the trial standard. It's not a manifest weight issue. It's a question whether there is any issue of fact requiring the judge to weigh evidence. I just don't like to see bad law made up. And at best, we look at the... not just the Pedrick standard. Well, we could apply the Pedrick standard under the Fudin case that the Supreme Court decided, where we can weigh the evidence only where the evidence is overwhelming. Well, I just don't like to see bad law made, Your Honor. And I think if you allow this card standing by itself even to produce a question of fact... Speaking of that, Counsel, could you imagine if we published this opinion and said that this is not an adequate card, that the printers in Chicago and perhaps other states would have a fiddle day because they'd have to redo probably what most banks feel at this point to be adequate, although I'm certainly not going to speculate about that because I'm not about to take judicial notice of anything that I haven't been requested to take judicial notice. Well, I don't think they have to change anything, Your Honor. They just have to follow their own protocol. If they follow their own protocol and they have another document signed by the account holder, they wouldn't have this problem. But they can't act as judge and jury and expect you to say, well, give them a pass here and say, well, there's a question of fact because somebody wrote ITF on there. Tough law. If that comes out like that, they're going to get a lot of slop, and as far as I'm concerned, a lot of sloppiness from financial institutions. And they're going to start acting like judges and juries and we'll give it to whoever we feel like giving it because there's a question of factor. Do we have anything further, counsel? No. I saw your eyes and I better not, right, Judge? No, I'm just saying I think you guys have adequately beaten it. Unless you have any questions, I'm finished for the day. Thank you. Thank you. Now you can beat it to Mark. Because he's going to bring that case up and then you're going to say I missed something I wanted to. There are a couple of points I'd like to make about this White Tribune case. First of all, it deals with and talks directly about the Illinois Savings and Loan Act that was apparently in Illinois revised statutes 1969. So it's still not clear to me. This deals with a slightly different act than the act we're dealing with here. What it does say, though, it stands for the proposition that a typed notation on a passbook is not enough. There's no signature involved in this White Tribune case. Here we have Ms. Epstein's signature on a card. She came in, told Ms. Matthews that she wanted to change her beneficiary. They wrote at the top of it, Shirley Ida Epstein, ITF, meaning in trust for Eddie Epstein, and then she signed it. That's very different than a typed notation on a passbook that somebody found after this man died. Also, even without the writing. There's some very pungent policy statements in that. There are. There are. That's true. I do apologize. I didn't know about this case before, and so everything I'm saying about it now is based on the case. From what we considered, and I don't think I have a problem taking judicial notice of the fact that Justice McNamara was a highly regarded appellate judge. And I'm sure that he was. And Judge McNamara, in this case, decided that even without the writing, based on all of the other acts, a valid patent trust was set up. In other words, there was a statute that said if you use a writing, you can set up a payable on death account. He said that the writing was not enough because it was a typed notation on the top of a passbook that didn't have any signature on it, and they found it later. But based on the other facts and circumstances, the other evidence that came in, they found that a valid patent trust was set up in the face of a statute that talked about a writing just like the statute that you asked me about, Judge House. So to me, based on my quick read, this looks like my case. It looks like it supports my argument. But if Your Honor would like for us to take more time and review it. Counsel, gentlemen, you both read that case, and I'm sure, you know, if our presiding judge is so inclined, if you ask for an opportunity to write on it, I would have no objection to it. No problem. It depends on what they – I'd say what they want to do. You have to ask for it, though. Okay. From my perspective, based on my reading of the case, I think as I stand here today that the case comes down as I just described to Your Honor. If this would be helpful or if my opponent disagrees or whatever, I'm happy to write whatever brief is necessary. But I don't think there's anything in there. My own suggestion would be that it be limited to three or four pages. Just for the – I think that's right. If we were to do it, I think that's right. He's asking you first whether you want to respond, and, two, if you do, that it be limited to three or four pages. No, I think that the judges that have read this case know they're going to apply the law for what they see tonight. So be it. As you said, I don't want to keep beating this thing into the ground. I mean, I think this is clear that you better have a little better of an interest in it. This might not surprise you. I disagree with counsel in terms of the way the case reads. But what the case stands for is even in the face of a statute, like there was the Illinois Savings and Loan Act as opposed to the particular statute that applies here, when they found the writing inadequate based on the surrounding facts and circumstances, there was still a ballot box for us. I have just a couple of other points I'd like to make responding, if I might, to what the administrator's counsel said during his argument. The fact that it said individual account and not trust account at the top is of no moment. A Taunton trust account can be made from any sort of account. It doesn't have to be a trust account. It's any sort of account, and that's exactly what the statute says in Section 2 in its definition section. Also, the idea behind a Taunton trust is that it's not, you know, it is a savings account or some sort of account. It can be any kind of an account. Well, it's a bailment, actually, yes, the court's a bailment, right? It's not, no, no, I'm just confusing it with an IRA. An IRA is a bailment. It's not a deposit. That's right, yeah. They still, you know, the person who sets up the account has full access. They can drain the account completely if they so choose. But then at the time they die, ownership of that account goes over, goes down to probate. It creates a very, it's almost a fiction because the difference between a deposit and a trust is that there be a present conveyance of an interest, which here is quite ephemeral but nevertheless recognized as creating a right of survivorship. That's right. Without giving up any lifetime interest. That's right, and in that sense it's revocable. And the card is as well as in its fruits. Right, I think that's right. Now, in terms of, you know, she didn't write the card, and gee, if she would have filled out the card herself as opposed to just signing it, it might have made some difference. That's not what the law says. What the law says is, is there sufficient evidence that she had the intent to create this particular tot and trust? And that is the question that is presented, whether based on the facts and circumstances, the fact that she signed the card, the fact that she came into the bank that day with no other apparent purpose and with no other possible purpose that anybody can explain. That she signed it with her nephew's name, Eddie Epstein. That there's absolutely no evidence that her nephew drove her there or anything else. This is, you know, we're just grasping at straws when we talk about those kinds of things, it seems to me. The bottom line is she walked into the bank, she asked to change her signature card, she signed her name. There's no other reason that can be given. Finally, in terms of seeing bad law made, how about the intent of all those people that have signed these cards thinking that that's what was going to happen with their money? These are people who are deciding what they are going to do with their assets, and now if we were to change that, if we were to change the law to say that that's not sufficient, I'm more concerned about what happens to all of those people. Counsel, the horribles, I suppose they're a cogent argument, but they're the weakest part of an argument is when you trundle out the horribles one way or another. Did the bank tell her to use the wrong card in this case? Is that what happened here, she grabbed the wrong card instead of the... Well, no, it's not that she grabbed the wrong card, she grabbed a note card, or excuse me, she grabbed a signature card and she signed it, but then when she went looking for that legal change of trust or whatever it is, the second form that's not required by law, that she didn't find. But I don't think there's any problem in terms of which card she pulled. There's certainly no evidence that this particular card is different, and in fact, Linda Aitken testified that based on her 20-some years in banking, including at Citibank since 1987, this is the way taught and trusts are set up, as have been hundreds of others since she's been at the bank. Okay. Thank you both. We'll let you guys go as best I think you got your chance to say. And we'll take this under consideration, but it was enjoyable. Thank you. Thank you very much. We're very surprised to get the request for oral argument. Oh, we wanted to hear. Yeah. Thank you. Take care. Thank you.